UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORNE LEROY SCOTT,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ et al.,<br><br>Respondents. | Case No. 2:26-cv-03026-TMC<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

Before the Court is Lorne Leroy Scott's petition for writ of habeas corpus. Dkt. 1. Scott, who has been in immigration detention for two-and-a-half years, seeks his immediate release from custody at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"). Scott argues that his ongoing detention violates the Immigration and Nationality Act ("INA") and his right to procedural due process because the Department of Homeland Security ("DHS") failed to provide him with a constitutionally adequate bond hearing, Dkt. 1 ¶¶ 53–79, and that the consequences of continued incarceration for his medical conditions violate substantive due process, *id.* ¶¶ 80–102. Because the Immigration Judge ("IJ") conducting Scott's court-ordered bond hearing failed to apply the correct legal standard, the Court concludes that Scott's procedural due process rights were violated and that the denial of bond was an abuse of

discretion. The Court therefore GRANTS Scott's habeas petition and orders his prompt release from custody on reasonable conditions of supervision. The Court declines to reach Scott's substantive due process claim.

## II. BACKGROUND

On October 19, 2012, Scott was admitted to the United States as a lawful permanent resident. Dkt. 12 ¶ 5. About seven years later, Scott pleaded guilty in California Superior Court to robbery with a firearm enhancement, in violation of Cal. Penal Code §§ 211 and 12022.5(a). *Id.* ¶ 6. Scott was sentenced to six years in prison for the robbery and three years, running concurrently, for the firearm enhancement. *Id.* While in prison, Scott became eligible to serve and volunteered in the fire camp program (which requires a minimum custody security designation) and worked in maintenance and food services for the fire camps. *See* Dkt. 5-3 at 16–24.

Upon his release from prison, Immigration and Customs Enforcement ("ICE") took Scott into custody on March 12, 2024, serving him with a Notice to Appear. *Id.* ¶ 7. It alleged that he was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony as defined under 8 U.S.C. § 1101(a)(43)(G). *Id.*

Scott has been detained in three different immigration detention facilities: Golden State Annex in McFarland, California; Anchorage Correctional Complex in Anchorage, Alaska; and NWIPC in Tacoma, Washington, where he is currently detained. Dkt. 5 ¶ 19. While in DHS custody, Scott has suffered from flare ups of Crohn's Disease. *Id.* ¶ 20. Both Scott and Respondents have submitted medical records and declarations describing Scott's treatment and symptoms while in custody. *See generally* Dkt. 2; Dkt. 5-3; Dkt. 11.

On December 16, 2024, an Immigration Judge ("IJ") denied Scott's application for relief from removal and ordered him removed to Jamaica. Dkt. 12 ¶ 14. Scott timely appealed the order before the Board of Immigration Appeals ("BIA"). *Id.* ¶ 15.

Meanwhile, Scott returned to California Superior Court to challenge his robbery conviction. On February 28, 2025, the Superior Court vacated Scott's conviction under Cal. Penal Code § 211 under California's post-conviction statute, P.C. § 1473.7(a)(1). Dkt. 5 ¶ 8. Scott entered new pleas to Cal. Penal Code §§ 459, burglary, and 25400(a)(3), carrying a concealed firearm. *Id.* With his robbery conviction vacated and his removal order pending before the BIA, Scott moved to remand and terminate his removal proceedings, as the removal order was based on the now-vacated robbery conviction on March 4, 2025. *Id.* ¶ 9.

On September 26, 2025, the BIA denied Scott's motion to remand and dismissed his appeal. *Id.* ¶ 24. The BIA's decision was timely appealed before the Ninth Circuit, where it is currently pending, with Scott's removal stayed. *Id.* ¶ 25. The BIA's reasoning in rejecting Scott's administrative appeal, and its consequences for Scott's ongoing detention, are discussed in detail in this Court's order on Scott's earlier habeas petition. *Scott v. Wamsley*, No. 2:25-cv-01819-TMC, 2025 WL 3514304, at *2–3, *5–6 (W.D. Wash. Dec. 8, 2025). On December 8, 2025, the Court granted that petition in part and ordered the respondents to provide Scott "with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)."

Scott filed his first petition for writ of habeas corpus, *Scott v. Wamsley, et al.*, No. 2:25-cv-01819-TMC, which was granted in part on December 8, 2025. The Court ordered Federal Respondents to provide Scott "with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)," including proving by clear and convincing evidence that his ongoing detention was justified. *Id.* at *10.

A bond hearing was held on December 16, 2025. Dkt. 5 ¶ 14. The IJ ultimately found that DHS met its burden in establishing that Scott was "both a danger and a flight risk," and denied him bond. Dkt. 5-5 at 8; Dkt. 5-6 at 6. Scott timely appealed the bond denial, which is pending before the BIA. Dkt. 5 ¶ 16.

With the appeal of his removal order before the Ninth Circuit and the appeal of his December 16, 2025 bond hearing before the BIA, Scott filed the instant petition on August 26, 2026. Dkt. 1. Federal Respondents responded on September 10, and Scott replied on September 15. Dkts. 10, 15. After briefing was complete, the case was reassigned to the undersigned judge as related to the earlier petition.

## III. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## IV. DISCUSSION

Scott makes two arguments in support of this petition. The first is that the IJ abused his discretion when he denied Scott bond on December 16, 2025. Dkt. 1 ¶¶ 53–79. The second is that Scott's continued detention "violates substantive due process because it is punitive in nature and serves no lawful purpose." *Id.* ¶¶ 80–98. Before addressing the merits of these arguments, the Court will first address Respondents' argument that the Court should dismiss Scott's petition for failure to exhaust his administrative remedies. *See* Dkt. 10 at 4–8.

### A. The Court will not require administrative exhaustion.

Federal Respondents argue that the Court should require exhaustion based on the three-factor test from *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). For Scott's claims, "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Under *Puga*, a court may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

488 F.3d at 815. That said, "even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

"Under the factors outlined in *Puga* . . . prudential exhaustion is not necessary where the petitioner . . . raises a constitutional challenge to the adequacy of a bond hearing." *Vasquez v. Scott*, No. 2:26-CV-02515-DGE, 2026 WL 2285535, at *2 (W.D. Wash. Aug. 7, 2026) (citing *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004)) (citation modified). "In this matter,

because petitioner challenges the constitutional adequacy of a bond hearing ordered by the Court, prudential exhaustion does not apply or is excused or waived." *Fletes-Velasquez v. Hernandez*, No. C26-1908 TSZ, 2026 WL 1871890, at *2 (W.D. Wash. June 30, 2026). Accordingly, the Court will consider the merits of Scott's petition.

**B. The IJ violated Scott's procedural due process rights and abused his discretion by failing to hold the government to a clear and convincing evidence standard.**

Scott argues that the IJ abused his discretion when denying bond because: (1) he failed to employ the clear and convincing evidence standard required by *Singh*; (2) he failed to "meaningfully engage with the evidence on the record"; (3) he relied "on evidence that as a matter of law cannot support a dangerousness finding "; and (4) he shifted the burden onto Scott when he "impermissibly played the role of prosecutor." Dkt. 1 ¶ 57. Respondents refer the Court to the recorded audio of the bond hearing and the IJ's written bond memorandum, but they do not defend the substance of the bond decision. *See* Dkt. 10; Dkt. 15 at 1.

This Court's previous habeas order required the government to prove that Scott's prolonged detention remained justified by clear and convincing evidence. *Scott v. Wamsley*, 2025 WL 3514304, at *10. This order stemmed from Ninth Circuit precedent requiring that, for prolonged detention hearings to comply with due process, "the government had to bear the burden of proving by clear and convincing evidence that the alien poses a flight risk or a danger to the community." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011)); *see also id.* at 1198–1202 (discussing the evolution of relevant Ninth Circuit precedent and leaving open the application of *Singh* to prolonged detention hearings under 8 U.S.C. § 1226(c)). If an IJ fails to apply the clear and convincing evidence standard, they thus violate the detainee's due process rights and abuse their

discretion. *See Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (application of wrong legal standard is abuse of discretion).

The Ninth Circuit has instructed through *Martinez* that generally, when an administrative court recites the correct burden, a reviewing federal court "takes the [agency] at its word," unless there are "any red flags." *Id.* For example, the agency is not required "to discuss each piece of evidence submitted," and the federal court will typically accept that the agency applied the correct legal standard if it "expressly cited and applied the relevant caselaw in rendering its decision." *Id.* (citation modified). But "when there is an indication that something is amiss, like if the [agency] misstates the record or fails to mention highly probative or potentially dispositive evidence, we do not credit its use of a catchall phrase to the contrary." *Id.* (citation modified).

Here, although the IJ recited the correct standard, the record contains "red flags" that are so significant they lead the Court to the conclusion that the IJ failed to apply the required burden of proof. At the bond hearing, the government argued only that Scott posed a danger if released. *See* Dkt. 14 (audio recording) at 2:00–4:33, 15:22–27. The government made no argument or attempt to prove that Scott posed a risk of flight. Yet the IJ then concluded that the government had met its burden to prove by clear and convincing evidence that Scott was both a danger and a flight risk. *Id.* at 15:40–49. It is unclear how the government could meet its burden to prove, let alone by clear and convincing evidence, a theory it did not pursue. While the IJ questioned Scott's counsel about *Guerra* factors that might weigh on risk of flight—such as where he would live if released, and his family ties to his mother (a lawful permanent resident) and his U.S.-citizen siblings and child—Scott did not bear the burden, and the only evidence on risk of flight developed through the IJ's questioning weighed strongly in Scott's favor. *See id.* at 9:30–13:40. There is simply nothing in the contemporaneous record of the bond hearing that could support a

finding that the government had met its burden to prove flight risk by clear and convincing evidence.

This remains true even if the Court considers the post-hoc bond memorandum written after Scott appealed the bond denial to the BIA. *See* Dkt. 5-6; *see also Singh*, 638 F.3d at 1208–09 (requiring contemporaneous recordings of prolonged detention bond hearings because the post-hoc memos do not satisfy due process). In that memorandum, the IJ justifies his risk of flight determination by noting that the BIA has dismissed Scott's appeal, and while Scott "has filed a PFR at the Ninth Circuit, the outcome of that appeal is speculative." Dkt. 5-6 at 6. But that is true of *every* detainee whose proceedings are in judicial review at the Ninth Circuit; if that were enough to prove by clear and convincing evidence that a detainee was a flight risk, there would be no point to prolonged detention bond hearings at all. What's more, the actual record in Scott's bond proceeding showed that he prevailed in his first habeas petition in part because of this Court's determination that his petition for review raised "not just a good faith challenge" to his removal, "but strong arguments that the BIA erred by upholding his removal order and will be reversed by the Ninth Circuit." *Scott v. Wamsley*, 2025 WL 3514304, at *9. The IJ's ruling—even in the post-hoc memorandum—is a conclusory statement that would apply to every detainee in Scott's procedural posture, and it fails wholly to engage with either the arguments made by the government or the evidence in the record. *See Martinez*, 124 F.4th at 785 (reviewing court does not credit mere recitation of a legal standard if the agency "misstates the record" or "fails to mention highly probative or potentially dispositive evidence").

There is no question on this record that the IJ found Scott to be a flight risk without requiring the government to meet its clear and convincing burden of proof. And although the bond proceedings involved far more discussion of the government's argument concerning danger, there is no rational way for this Court to conclude that the IJ held the government to its

burden for one of its findings but not the other. Although the Respondents to this petition have not expressly conceded this ground of relief, it is notable that they have made no effort to defend the IJ's ruling.

Because the IJ did not apply the correct legal standard to Scott's bond hearing, the Court concludes that the bond denial was the result of both a procedural due process violation and an abuse of discretion. *See Singh*, 638 F.3d at 1203–05; *Martinez*, 124 F.4th at 785. And because there is no constitutionally adequate basis for Scott's ongoing prolonged detention, the Court will order his release. *See Segura Serrano v. Scott*, No. 2:26-CV-01268-LK, 2026 WL 1674357, at *9 (W.D. Wash. May 26, 2026) ("Because Segura Serrano's bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for his continued detention, the Court concludes that the 'typical remedy' of release is appropriate.") (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). The petition for writ of habeas corpus is therefore GRANTED, and the Court declines to address Scott's remaining arguments.

## V. CONCLUSION

For the reasons explained above, the Court ORDERS as follows:

1. The petition for writ of habeas corpus (Dkt. 1) is GRANTED.

2. Within ONE day of this Order, Respondents must release Petitioner Lorne Leroy Scott from custody with reasonable conditions of supervision.

3. Upon his release, Respondents must return to Scott any personal property, including any personal identification document (other than a passport) and any employment authorization document.

4. Respondents shall file a status report by October 11, 2026 confirming that Scott has been released.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are encouraged to meet and confer on any fee request before filing a petition.

Dated this 9th day of October, 2026.

Tiffany M. Cartwright
United States District Judge